IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

**DOSSIE WAYNE KEMP,** *et al.*                                                                 **PLAINTIFFS**

**v.**                                           **CASE NO. 1:89-CV-01111**

**LEE ROY BEASLEY,** *et al.*                                                                   **DEFENDANTS**

**AND**

**REV. FRANK TOWNSEND,** *et al.*                                                               **PLAINTIFFS**

**v.**

**LEE ROY BEASLEY,** *et al.*                                                                   **DEFENDANTS**

## EL DORADO SCHOOL DISTRICT'S RESPONSE TO MOTION TO INTERVENE

**I.     Introduction**

The Arkansas Department of Education ("ADE") and the State Board of Education ("SBE") seek to intervene in this case to argue that this Court "should end all supervision over El Dorado." ADE and SBE claim that they are entitled to intervene pursuant to Fed. R. Civ. P. 24(a)(2). ADE/SBE Brief (Doc. No. 44), p. 4. Rule 24(a) allows intervention only when the proposed intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). In the Eighth Circuit, prospective Rule 24(a) intervenors must have independent Article III standing to litigate their claims in federal court. *E.g. United States v. Metropolitan St. Louis Sewer Dist.*, 569 F.3d 829, 833-34 (8th Cir. 2009)("In our circuit, a party seeking to intervene must establish Article III standing in addition to the requirements of Rule 24(a)."). As will be shown below, ADE and SBE do not have Article III standing.

1

## II. ADE and SBE lack sufficient "interests" to justify intervention or constitute Article III standing.

ADE and SBE claim that they are entitled to intervene because they have "[i]nterests in [e]ducation [p]olicy." ADE/SBE Brief, p. 4. They assert (wrongly) that "Arkansas has adopted broad school-choice policies letting any student 'apply for admission. . . in any school district.'" ADE/SBE Brief, p. 4, (selectively quoting Ark. Code Ann. § 6-18-1901(b)(3)). ADE and SBE also allude to "federalism concerns." *Id.* Neither the agencies' purported interest in "school-choice policies" nor their "federalism concerns" is sufficient to support intervention or confer standing.

### A. Arkansas's School-Choice Policy

ADE and SBE do not make education policy for the State of Arkansas. That role is left to the General Assembly. *E.g.*, *Jenkins v. Mercy Hosp. Rogers*, 2021 Ark. 211, *9. (Arkansas's "public policy must be outlined in our statutes."); *see also Shelter Mut. Ins. Co. v. Lovelace*, 2020 Ark. 93, *4 ("It is generally recognized that the public policy of a state is found in its constitution and statutes."). Arkansas's public policy is found in our statutes, and ADE and SBE have no responsibility for policy making related to school choice. *See* Ark. Code Ann. § 6-11-105 (listing powers and duties of SBE, which do not include establishment of state education policy); Ark. Code Ann. § 6-18-1901 *et seq.* (no mention of a policy making role for ADE or SBE in Public School Choice Act of 2015).

Arkansas's chosen policy is *not* unrestricted school choice—it is school choice which "does not conflict with an enforceable judicial decree or court order remedying the effects of past racial segregation in the school district." Ark. Code Ann. § 6-18-1901(b)(3). Ark. Code Ann. § 6-18-1906, which is part of the Public School Choice Act of 2015, is aptly titled "Limitations." One of the "limitations" specifically provides that where school choice "conflict[s] with a provision of

2

an enforceable desegregation court order or a district's court-approved desegregation plan, either of which explicitly limits the transfer of students between school districts, the provisions of the order or plan shall govern." Ark. Code Ann. § 6-18-1906(a).

ADE and SBE argue that, "[a]s long as it remains under judicial supervision, El Dorado is exempt from Arkansas's chosen policy of interdistrict school choice." *Id*. This statement falsely implies that El Dorado's exemption from participation in school choice is in conflict with state policy, when in fact the school choice statutes explicitly recognize and allow exemptions such as El Dorado's. Because "a State's public policy is best evidenced by its statutes," the school choice exceptions—which were specifically enacted by the Arkansas General Assembly and codified in statute—by definition cannot run contrary to public policy, as the exemption is part of the public policy. *Cf. State Farm Mut. Auto. Ins. Co. v. Henderson*, 356 Ark. 335, 342 (2004). ("[A]n insurance provision that is in accordance with a statute cannot run contrary to public policy."). Therefore, contrary to the state agencies' arguments, nothing about the El Dorado consent decree "thwarts the State's school choice policy." ADE/SBE Br., p. 1. El Dorado's non-participation in school choice is specifically allowed by statute, and this Court should reject the ADE's and SBE's attempt to manufacture an "interest" sufficient to justify intervention or confer standing.

**B.     Federalism and "Sovereign Interests"**

ADE and SBE contend that this Court's ongoing supervision raises "federalism concerns." ADE/SBE Brief, p. 4. There are several problems with this argument. First, the case the agencies rely on is *Horne v. Flores,* 577 U.S. 443 (2009), which specifically holds that "Rule 60(b)(5) may not be used to challenge the legal conclusions on which the prior judgment or order rests. . .". *Id.* at 447. That is exactly what the ADE and SBE are attempting to do here. Instead of acknowledging that they "bear[] the burden of establishing that changed circumstances warrant relief," as is

3

required under *Horne*, ADE and SBE argue instead (ADE/SBE Brief, pp. 1, 6) that this Court's previous "decision was wrong," an argument precluded by *Horne*. *Id.*

Second, ADE and SBE do not explain how they, as state agencies with no authority to establish statewide education policy, have standing to raise "federalism concerns." That may not matter because, as shown below, the ADE/SBE brief does not identify a sufficient interest to warrant Rule 24(a) intervention or confer standing even if the State of Arkansas, rather than two state agencies, were attempting to intervene.

      C.      **ADE and SBE do not have sufficient sovereign interests.**

ADE and SBE may seek to reply in order to make the argument that the State made in the Camden Fairview case (No. 1:88-cv-01142), that they have "significant sovereign interests" in preventing violations of the constitutional rights of Arkansas citizens. That argument, which is based on a forty-year-old Third Circuit case (*Pennsylvania v. Porter*, 659 F.2d 306 (3d. Cir. 1981)), is unavailing for two reasons. First, these two state agencies have not shown that they have "sovereign interests" in the same sense that a State might. And second, for the same reasons asserted by the Camden Fairview School District in that pending case, even the State of Arkansas would not have "sovereign interests" at stake in this case sufficient to confer Article III standing or justify intervention under *Porter*.

A recent case from the Eastern District of Louisiana explains that "sovereign interests" must be more substantial than those asserted here to confer Article III standing. In *Harrison v. Jefferson Parish Sch. Bd.,* 2022 U.S. Dist. LEXIS 31453, the district court held that the State of Louisiana could not continue to intervene in a case involving student discipline issues because "[t]he State's asserted interest in the case is 'too vague to survive the standing requirements of Article III.'" *Id.* at *40, *quoting Alfred L. Snapp & Son v. Puerto Rico*, 458 U.S. 592, 602 (1982).

4

Louisiana was initially granted leave to intervene in two student discipline cases (*id.* at *8), but the students settled, the court dismissed their claims (*id.* at *10), and the School Board moved for judgment on the pleadings with respect to the State's complaint in intervention (*id.* at *11-*12), arguing that the State lacked standing to pursue constitutional issues related to student discipline. *Id.* at *12-*15. The State resisted the motion, asserting a position similar to the one ADE and SBE argue here:

> [T]he State argues that it has standing to assert claims for violations of its citizens' constitutional rights. The State contends that the State may bring a *parens patriae* action to assert the rights of its citizens. The State argues that it has a quasi-sovereign interest in "assuring that the benefits of federal law and civil rights are not denied to its general population," and that this interest exists "apart from the interests of private parties."

*Id.* at *17-*18. Louisiana also argued that "'JPSB has a policy, practice, or custom' of violating students' rights," and that JPSB had "a long history of constitutional and civil rights violations" sufficient to establish "a pattern, practice or policy of such violations" (*Id.* at *17-*18), so the State had an interest in ensuring compliance with state and federal law.

The court considered the State's quasi-sovereign interest argument, and concluded that the State's asserted interest was insufficient to confer standing:

> Although here the State asserts general interest in protecting its citizens' rights, the State does not identify any case in which the *parens patriae* doctrine was invoked in circumstances similar to those here, much less any binding precedent in the Fifth Circuit. Instead, the State relies on a forty year old Third Circuit case, as well as district court cases from other circuits, for the general proposition that states can bring suits for injunctive relief to protect their citizens' constitutional rights. But those cases similarly arose in quite different contexts and, as explained more below, involve a State suing to prevent harms to its citizens broadly. Absent some authority applying the *parens patriae* doctrine in a similar context, the State's mere invocation of an interest in protecting its citizens is "too vague to survive the standing requirements of Article III."

10167.0009/10061906.1

*Id*. at *34, *quoting Snapp*, 458 U.S. at 602. The court also held that "the State ha[d] not met its burden of alleging injury to a 'sufficiently substantial segment' of the population," granted JPSB's motion for judgment on the pleadings, and dismissed the State's case. *Jefferson Parish*, at *34, *40-*41.

Here, there is a consent decree in place which impacts a limited number of students in one school district. ADE and SBE argue that court supervision of that decree raises "federalism concerns" because it somehow impairs their implementation of "broad school-choice policies." ADE/SBE Br., p. 4. Their invocation of an interest in "policy choices," however, is "too vague to survive the standing requirements of Article III." *Jefferson Parish* at *34, *quoting Snapp*, 458 U.S. at 602. They have also failed to allege any injury to more than a small number of students, let alone an injury to a substantial portion of the population, as required in *Jefferson Parish*. *Jefferson Parish* at *34. There are not "significant sovereign interests" at stake in this case.

**Conclusion**

The Arkansas Department of Education and the State Board of Education seek to intervene for an improper purpose based on false premises. Fed. R. Civ. P. 60(b)(5) "may not be used to challenge the legal conclusions on which a prior judgment or order rest," as the ADE and SBE seek to do here. *Horne v. Flores,* 557 U.S. 433, 447 (2009). Their Motion to Intervene is based on the false premises that the orders in this case somehow "thwart[] the State's school-choice policy," when those orders may in fact continue to be implemented in harmony with Arkansas public policy as reflected in its statutes; and that those orders somehow impair a "significant sovereign interest" raising "federalism concerns," even though the case law shows that the agencies' asserted interests are too vague and affect too few people to support Article III standing.

6

ADE's and SBE's Motion to Intervene should be denied for three reasons. First, there is no conflict between Arkansas' school choice policies, as reflected in state law, and the consent decree in this case. Second, ADE and SBE have no authority to establish "school-choice policies," so their exercise of their limited authority cannot be impaired by continued court supervision. Third, ADE's and SBE's asserted interest in this case is even more vague than the interest asserted by Louisiana in *Jefferson Parish*. *See* State's Br., p. 5. ("As long as this Court retains supervision over El Dorado, it thwarts the State's policy choices."). The El Dorado School District respectfully requests that ADE's and SBE's Motion to Intervene be denied.

Respectfully submitted,

Whitney F. Moore (Ark. Bar No. 2009193)
WHITNEY F. MOORE, P.A.
23 Huntington Road Little Rock, AR 72227
Telephone: (870) 818-5490
Email:  whitney@aprobertslaw.com

– AND –

Christopher Heller (Ark. Bar No. 81083)
FRIDAY, ELDREDGE & CLARK
400 West Capitol, Suite 2100
Little Rock, Arkansas 72201 3493
Telephone:  (501) 370-1506
Email:  heller@fridayfirm.com

*Attorneys for Defendant El Dorado School District*

10167.0009/10061906.1