IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

DOSSIE WAYNE KEMP, *et al.*                                                                PLAINTIFFS

v.                                        Civil No. ED-1048

LEE ROY BEASLEY, *et al.*                                                                  DEFENDANTS

and

REV. FRANK TOWNSEND, *et al.*                                                              PLAINTIFFS

v.                                        Case No. 1:89-cv-01111

LEE ROY BEASLEY, *et al.*                                                                  DEFENDANTS

## ORDER

Before the Court is a Motion to Intervene, Declare El Dorado School District Unitary, and Expedite Proceedings filed by the Arkansas Department of Education and Board of Education (collectively, "ADE and SBE" or the "Agencies"). ECF No. 43. The Agencies seek to intervene in this case pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. *Id.* The Agencies additionally seek a declaration that El Dorado School District ("EDSD") has achieved unitary status or, in the alternative, to vacate its 2016 Order. *Id.* EDSD filed a response in opposition. ECF No. 53. The Agencies filed a reply in support of their motion. ECF No. 58. The Court finds the matter ripe for consideration.

### I. BACKGROUND

"Prior to and including the 1964-65 school year it was the practice of the District of El Dorado, Arkansas to operate a racially segregated school system." *Kemp v. Beasley*, 352 F.2d 14, 16 (8th Cir. 1965). The White children of the community were assigned to all-White schools and the Black children were assigned to all-Black schools. *Id.* When El Dorado rejected the

application of Black students to transfer to the all-White schools, the parents of minor Black students filed this lawsuit as a class action purporting to represent all the Black school children of the school district. *Id.* The Court subsequently ordered desegregation. *Id.* The parties adopted a "freedom of choice" desegregation plan, however, in 1968, the Supreme Court of the United States declared "freedom of choice plans," such as the one the parties had adopted, as unconstitutional. *See Raney v. Board of Ed. of Gould, Ark. School Dist.*, 391 U.S. 443, 447 (1968) (stating the "freedom of choice plans" are "inadequate to convert to a unitary, nonracial school system"). On August 2, 1971, clearly considering *Raney*, the Court prohibited the "freedom of choice" policy and finalized a desegregation plan (hereinafter the "1971 Order"). *See* ECF No. 35-1.

On August 14, 2016, EDSD filed a Motion for Declaratory Judgment seeking clarification of how the Arkansas Public School Choice Act of 2015 applies to the 1971 Order. ECF No. 35. On August 31, 2016, the Court entered an Order finding the following:

> Participation in the 2015 School Choice Act would allow inter-district movement of students between EDSD and surrounding districts. If allowed, based on the demographics of EDSD and the surrounding districts, such movement would have a segregative impact in EDSD.
>
> The 2015 School Choice Act recognizes the command articulated in the Supremacy Clause, U.S. CONST., art. VI, cl. 2, that the Constitution of the United States is the supreme law of the land. The 2015 Act provides that "[i]f the provisions of this subchapter conflict with a provision of an enforceable desegregation court order . . . . regarding the effects of past racial segregation in student assignment, the provisions of the order . . . shall govern." ARK. CODE ANN. § 6-18-1906(a)(1).
>
> The 1971 Order is an enforceable desegregation court order regarding the effects of past racial segregation in student assignment. As such, the Order conflicts with participation in the 2015 School Choice Act, and EDSD appropriately declared its conflict with participating in the 2015 Act. That conflict means that EDSD is not a participant in or subject to the school choice transfers contemplated by the 2015 Act.
>
> . . . .
>
> The Court maintains continuing jurisdiction over this matter until it finds that EDSD should be released from Court supervision.

ECF No. 41, ¶¶ 9, 10, 11, 13.

On April 10, 2023, the Agencies filed the instant motion arguing that it is no longer necessary for the Court to supervise EDSD, and thus the Court should terminate its 2016 Order. ECF No. 43, p. 1.  Further, because EDSD allegedly inadequately represents their interests, the Agencies request that the Court allow them to intervene to seek termination themselves.  ECF No. 44, p. 5.  EDSD opposes the motion.  ECF No. 53.  The Agencies filed a reply in support of their motion.  ECF No. 58.

## II.  STANDARD OF REVIEW

Under Fed. R. Civ. P. 24(a)(2), a timely motion for leave to intervene "shall" be granted "when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 738 F.2d 82, 84 (8th Cir. 1984).  In the Eighth Circuit, "a party seeking to intervene must establish Article III standing in addition to the requirements of Rule 24." *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 833 (8th Cir. 2009).  "The requirements for Article III standing are (1) injury, (2) causation, and (3) redressability." *Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*, 759 F.3d 969, 974–75 (8th Cir. 2014); *Metro. St. Louis Sewer Dist.,* 569 F.3d at 833-34.  First, the prospective intervenor "must clearly allege facts showing an injury in fact, which is an injury to a legally protected interest that is 'concrete, particularized, and either actual or imminent.'" *Metro. St. Louis Sewer Dist.,* 569 F.3d at 834 (quoting *Curry v. Regents of the Univ. of Minn.,* 167 F.3d 420, 422 (8th Cir. 1999)).  Second, the party seeking to intervene must establish "a causal connection between the injury and the conduct complained of." *Lujan v. Defenders of Wildlife*,

504 U.S. 555, 560 (1992).  "[I]n other words, the intervenors alleged injury must be 'fairly traceable to the defendant's conduct.'" *Nat'l Parks Conservation Ass'n*, 759 F.3d at 975 (quoting *Metro. St. Louis Sewer Dist.,* 569 F.3d at 834).  Lastly, the prospective intervenor must establish that a "favorable decision will likely redress the injury." *Metro. St. Louis Sewer Dist.,* 569 F.3d at 834.  "Abstract injury is not enough." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101 (1983).

### III. DISCUSSION

The Agencies seek to intervene in this case to argue that the Court "should end all supervision over El Dorado."  ECF No. 44, p. 1.  Regarding its interests, the Agencies state that "[o]ur constitutional structure ordinarily leaves education policy in the hands of state policymakers, not federal judges." *Id.* at 4.  Citing Ark. Code Ann. § 6-18-1901(b)(3), the Agencies assert that "Arkansas has adopted broad school-choice policies letting any student "apply for admission . . . in any school district." *Id.*  Further, citing Ark. Code Ann. § 6-18-1901(b)(3), the Agencies assert that the 2016 Order conflicts with the state legislature's authorization of interdistrict choice. *Id.* at 4-5.  Thus, the Agencies argue, "[a]s long as this Court retains supervision over El Dorado, it thwarts the State's policy choices." *Id.* at 5.   Additionally, the Agencies argue that "[a]s El Dorado's 2016 request for exemption from school choice illustrates, the State cannot count on the District to represent its interests." *Id.* (cleaned-up).  Thus, the Agencies argue, "to ensure that a party to the case represents its sovereign interests, the State must itself step in." *Id.*  EDSD argues that the Agencies do not have Article III standing and have not made the necessary showing to justify intervention pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, and thus the Court should deny the Agencies' Motion to Intervene.  ECF No. 53, p. 4.  The Court agrees with EDSD.

4

The Agencies have not established that they have Article III standing to intervene on behalf of EDSD.  The Agencies argue that they have an education policymaking interest in the case because the "General Assembly has authorized the [SBE] (which is supervised by the [ADE], Ark. Code Ann. [§] 25-43-502) to 'adopt any rules necessary for the implementation' of school choice." ECF No. 58, p. 2 (citing Ark. Code Ann. 6-18-227(k)(1) and Ark. Code Ann. § 6-11-105(a)).  The Agencies further assert that their protected interest flows from the Rules Governing Standards for Accreditation of Arkansas Public Schools and School Districts, Standard 3-A.10.1 (2022).[1]  However, the Court finds that the Agencies' asserted interest is not particularized enough to establish an injury-in-fact in this case.  *See Sierra Club v. Entergy Arkansas LLC*, 503 F. Supp. 3d 821 (E.D. Ark. 2020) (finding that the Arkansas Attorney General's Consumer Utility Rate Advocacy Division (CURAD) and coalition of electric consumers failed to establish injury in fact necessary for standing to intervene based on alleged economic interest and injury, because injuries were speculative and because potential intervenors failed to establish that injuries from rate increases were sufficiently particularized, and not of the type shared by the general public); *Harrison v. Jefferson Par. Sch. Bd.*, 78 F.4th 765 (5th Cir. 2023) (affirming district court's decision disallowing the State of Louisiana to intervene in a case involving student discipline issues because the State's asserted interest in the case was too vague to survive the standing requirements of Article III).  Simply stating an interest in the litigation does not establish Article III standing.[2] *United States v. Texas*, 599 U.S. 670, 677 (2023) ("A 'telling indication of the severe constitutional

---

[1] "Beginning September 15 of each year, any public school district identified in Section 3-A.10 shall submit written quarterly reports to the Division detailing the district's outstanding desegregation obligations and the district's efforts towards obtaining full unitary status and release from court supervision.  The detailed plan shall include the district's progress towards meeting its obligations and timelines for reaching a determination of full unitary status and release from court supervision." https://dese.ade.arkansas.gov/Files/Standards_for_Accreditation_(FINAL_5-2-22)_20220502133915.pdf.

[2] The Agencies' arguments present an overly expansive view of Article III standing.  By their logic, any state or state agency could intervene in federal litigation that involves issues of state law.

problem' with [a state's] assertion of standing to bring this lawsuit 'is the lack of historical precedent' supporting it." (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 505, (2010))).

The Agencies have not alleged facts showing an injury to a legally protected interest that is "concrete, particularized, and either actual or imminent." *Curry,* 167 F.3d at 422. Because the Court finds that the alleged injury-in-fact is too speculative, it need not address the traceability or redressability factors. Thus, the Court concludes that the Agencies have failed to establish Article III standing which is required for successful intervention. Because the Court determines that the Agencies have not demonstrated standing, the Court finds that the Agencies' motion should be denied without reaching the merits of the requirements of intervention pursuant to Federal Rule of Civil Procedure 24(a).[3]

## IV. CONCLUSION

For the reasons discussed above, the Court finds that the Agencies' Motion to Intervene, Declare El Dorado School District Unitary, and Expedite Proceedings (ECF No. 43) should be and hereby is **DENIED**.

**IT IS SO ORDERED**, this 29th day of March, 2024.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

---

[3] Federal Rule of Civil Procedure 24(c) provides that "A motion to intervene . . . must state the grounds of intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." While the Agencies did file a memorandum brief in support of their motion (ECF No. 44), the Court notes that the Agencies did not file the requisite accompanying pleading pursuant to Rule 24(c).